UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERMAN LAMAR COLEY,

              Plaintiff,          6:17-cv-06886-MAT

     -v-                     **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

_____

## INTRODUCTION

Sherman Lamar Coley ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 1383(c). Presently before the Court are the parties' competing motions for judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On March 13, 2014, Plaintiff protectively filed for SSI, alleging disability beginning January 1, 1996. Administrative Transcript ("T.") 87. The claim was initially denied on August 1, 2014, and Plaintiff timely requested a hearing. T. 98-111. On August 26, 2016, a hearing was conducted in Rochester, New York by

administrative law judge ("ALJ") Brian Kane. T. 32-46. Plaintiff appeared with his non-attorney representative and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on November 25, 2016. T. 17-28. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. T. 163. The Appeals Council denied Plaintiff's request for review on November 16, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

### THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 416.920(a).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. T. 22.

At step two, the ALJ determined that Plaintiff suffered from the "severe" impairment of low-average intellectual functioning. *Id*. The ALJ also considered Plaintiff's left knee pain. The ALJ determined that because Plaintiff had only intermittent symptoms, no aggressive treatment was recommended or anticipated, and the medical evidence suggested the condition would improve in less than twelve months, Plaintiff's left knee pain was a nonsevere impairment. *Id*.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Plaintiff's impairment of low-average intellectual functioning under Listing 12.05. T. 23.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the nonexertional limitation of being limited to work requiring no more than a brief training period. T. 24.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 26. At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of hand packager, and cleaner-commercial institution. T. 27. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 27-28.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also*

*Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand of this matter is warranted because the ALJ's decision is unsupported by substantial evidence and based on an erroneous legal standard. Specifically, Plaintiff argues that: (1) the ALJ failed to properly develop the record when he denied Plaintiff's request for additional intelligence testing; (2) the Appeals Council erred by rejecting new and material evidence submitted by Plaintiff; and (3) the ALJ's RFC finding is

unsupported by substantial evidence. For the reasons discussed below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

## I. Plaintiff's First Argument: The Failure to Develop the Record Led to Step Two and Step Three Findings Unsupported by Substantial Evidence

Plaintiff argues the ALJ's step two and step three findings are unsupported by substantial evidence because there is a gap in the record. Specifically, Plaintiff contends the ALJ failed to properly develop the record when he denied Plaintiff's request to obtain intelligence testing and a second consultative examination following the hearing. Plaintiff further argues the record is missing Plaintiff's primary care records, causing a gap in the record.

### A. The ALJ's Decision to Forego Intelligence Testing

At the hearing, Plaintiff's representative indicated that Plaintiff might qualify for Listing 12.05. However, although Plaintiff had submitted some school records into evidence, they did not include an IQ test needed to meet Listing 12.05's requirements. T. 36. Accordingly, Plaintiff's representative requested the ALJ consider ordering an intelligence test. *Id*. The ALJ denied Plaintiff's request, noting that Plaintiff had already received a consultative psychiatric evaluation from Dr. Yu-Ying Lin in 2014. T. 41. The ALJ further noted that Plaintiff's representative had made the initial request for additional testing only a few days

before the hearing. T. 36. After Plaintiff's testimony, which included statements that he could barely read, his reading level was at the second grade equivalent, he could not multiply, and went grocery shopping with family to make sure he would get the correct change, the representative renewed the request for another consultative examination, which the ALJ denied. T 38, 41.

Claimants generally have the burden of producing evidence; however, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the administrative record. *Perez v. Charter*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). An ALJ may be required to obtain a consultative examination where there is a conflict, inconsistency, or insufficiency in the evidence that must be resolved before a determination can be made. *See* 20 C.F.R. § 416.919a(b). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted); *see also Morris v. Colvin*, No. 14-CV-689S, 2016 WL 3085427, at *4 (W.D.N.Y. June 2, 2016) (finding no error in the ALJ's determination to not further develop the record

where the ALJ had before him an adequate medical history to render a decision).

Plaintiff points out that consultative examiner Dr. Lin noted moderate impairment of Plaintiff's recent and remote memory skills "due to nervousness in the evaluation *and possible* limited intellectual functioning." T 291 (emphasis supplied). Dr. Lin "recommended intelligence and memory assessment *if needed*." T 291 (emphasis supplied). Notably, however, Dr. Lin found Plaintiff's nervousness to be a contributing factor to his impaired memory skills. And, Dr. Lin did not definitively recommend further testing but left it up to the adjudicator to use his discretion. Furthermore, Dr. Lin did not assign any nonexertional limitations that would preclude Plaintiff's ability to perform simple, unskilled work, notwithstanding Dr. Lin's finding of "possible limited intellectual functioning." Thus, Plaintiff has not demonstrated an obvious gap in the record.

Even assuming that the ALJ erred, Plaintiff has not established the harmfulness of the error. Plaintiff contends the record is unclear how the ALJ found that Plaintiff had low-average intellectual functioning since the record did not contain test results in the low-average range. Plaintiff does not, and cannot explain, how this assumption by the ALJ—which was favorable to Plaintiff—was harmful error. Plaintiff also argues that the record, absent intelligence testing, was insufficient for the ALJ to make

his step three finding that Plaintiff does not meet or medically equal Listing 12.05. The Court acknowledges that certain school records submitted by Plaintiff to the Appeals Council contain IQ test results that partially support Listings 12.05C and 12.05D. However, as discussed below in Section II, the ALJ's finding that Plaintiff could not fulfill the remaining prongs of those Listings is supported by substantial evidence.

### B. The Record was Sufficient to Properly Assess Plaintiff's Left Knee Impairment

Plaintiff contends the absence of Plaintiff's primary care records also constitute a gap in the record. Plaintiff further argues that the ALJ used these gaps to infer that Plaintiff's left knee condition was nonsevere.

At the hearing, Plaintiff testified he injured his leg jumping over a fence when he was fifteen years old. T. 40. More recently, Plaintiff testified he tore ligaments in the same leg while wrestling with a friend. T. 39-40.

The record contains a consultative orthopaedic examination by Dr. Harbinder Toor, treatment notes from orthopaedic surgeon, Dr. Stephanie E. Siegrist, and progress notes from URMC Orthopaedics and Rehabilitation, where Plaintiff received treatment for his left knee condition. *See* T. 286-88, 295-305. These records describe Plaintiff's complaints and detail examination and imaging findings relating to Plaintiff's left knee. Plaintiff argues the record is incomplete without a function-by-function medical opinion

by a treating physician. However, the ALJ detailed the 2014 findings of consultative examiner, Dr. Toor and treating orthopaedic surgeon, Dr. Siegrist, as well as the findings from Plaintiff's 2016 visits to URMC relating to the re-injuring of his left knee. *See* T. 22, 25.

On July 22, 2014, Dr. Toor examined Plaintiff at the Administration's requset. Dr. Toor noted Plaintiff injured his left knee at the age of fifteen, causing continued dull, achy, constant pain in his left knee. At times, his pain was at a ten on a scale of one to ten. Plaintiff reported he had difficulty walking, standing, squatting, and heavy lifting. T. 286.

Upon examination, Plaintiff exhibited an abnormal gait, slightly limping toward the left side. Heel and toe walking were difficult. Plaintiff was able to squat at twenty percent due to left knee pain. He had difficulty getting out of his chair, but used no assistive devices, and needed no help changing or getting on and off the exam table. T. 287. Plaintiff showed left knee flexion and extension at 140 degrees, with tenderness in the left knee. He had full range of motion in the right knee and both hips and ankles. T. 288. Dr. Toor opined Plaintiff had moderate-to-severe limitation with standing, walking, squatting, and that pain interfered with Plaintiff's balance. *Id*.

On July 29, 2014, Dr. Siegrist examined Plaintiff for his left knee pain. She noted Plaintiff ambulated without assistance and had

no limp. T. 298. Plaintiff's left knee had no effusion, warmth or erythema; no tenderness at the medial joint line or over an anteromedial plica, but was moderately tender at the tibial tubercle. The left knee was negative for McMurray's, and showed no ligamentous instability or patellofemoral tenderness or instability. *Id*. Plaintiff was able to tolerate full extension and cautiously to beyond 130 degrees, with some discomfort at the tendon insertion.

An X-ray performed on July 8, 2014 showed Plaintiff's left knee's joint spaces were well maintained, with no obvious fracture deformity, no loose bodies or other bony lesions. A concurrent MRI showed Plaintiff's left knee ligaments and tendons were intact, with no meniscus tears, and well-maintained articular cartilage throughout. T. 299. Dr. Siegrist noted a nondisplaced fracture through an ensythophyte at the patellar tendon insertion on the tibial tubercle, which was unchanged from prior images. Dr. Sigrist ordered a CT scan and scheduled a follow-up appointment.

A CT scan performed in August 2014 showed possible sequelae of Osgood-Schlatter's, with no overlying soft tissue swelling or pseudoarthrosis. T. 296. Based on the prior examination and imaging, Dr. Siegrist opined on September 11, 2014 that Plaintiff would benefit from the removal of the small bone fragment at his tibial tubercle and repair of the patellar tendon. Plaintiff did not follow through with the recommended procedure.

A URMC progress note dated April 15, 2016 indicates that Plaintiff presented to Strong's emergency room after he was wrestling with a friend and fell, twisting his left knee. T. 303. X-rays were negative for fracture or dislocation. Plaintiff was placed in a knee brace. Plaintiff reported his history of left knee trauma and that he did not have surgery on his left knee. On exam, Plaintiff's left knee had significant swelling. His straight leg raise test was normal. Plaintiff's knee was tender to palpation, with no gross instability with varus and valgus stress on the knee. *Id*. The examining nurse ordered an MRI and scheduled a follow-up appointment to review the MRI results.

On May 24, 2016, Plaintiff returned to URMC reporting his pain associated with his knee injury had improved since his last visit, noting he received relief from physical therapy. T. 304. An exam of Plaintiff's left knee was unremarkable. The examining doctor noted a review of the MRI results showed no ligamentous meniscal injury, but bone contusion was present. The doctor recommended continuing with physical therapy. *Id*.

As discussed above, the ALJ has an affirmative duty to develop the administrative record in disability proceedings. *Perez*, 77 F.3d 47. However, the Second Circuit has found that no evidentiary gap exists in the record, so long as "the record contain[s] sufficient other evidence supporting the ALJ's determination and the ALJ weighed all of that evidence when making his residual functional

capacity finding." *Johnson v. Colvin*, F. App'x 44, 46 (2d Cir. 2016) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (refusing to remand "solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity")). Furthermore, agency regulations provide that the ALJ is to generally "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.924(c)(4).

The ALJ did not request Plaintiff's primary care physician's medical records to assess Plaintiff's left knee impairment. Instead, he relied on the medical records and opinions from orthopaedic specialists who examined and treated Plaintiff specifically for his left knee impairment. Notably, Dr. Siegrist's treatment notes indicate Plaintiff was referred to her by his primary care physician for the specific purpose of examining his left knee. T. 301. The ALJ appropriately relied upon these notes and findings, rather than the treatment notes of Plaintiff's primary care physician, in determining Plaintiff's left knee impairment was nonsevere. Accordingly, the Court finds the ALJ adequately supported his step two finding and thus, remand is not warranted on this basis.

## II.  Additional Evidence Submitted to the Appeals Council

Plaintiff argues the Appeals Council erred in rejecting the additional school records Plaintiff submitted following the ALJ's decision. For the reasons set forth below, the Court disagrees.

After the ALJ issued his decision, Plaintiff submitted forty pages of additional education records from Rochester City School District for the period September 8, 1993 through April 29, 2006. T. 2, T. 47-86. Plaintiff argues that the Appeals Council should have considered this additional evidence because it was new and material and supports a finding of disability. Specifically, Plaintiff argues the evidence contains intelligence testing with results within the range required for Listing 12.05. For the reasons set forth below, the Court finds Plaintiff's argument is without merit.

To establish intellectual disability Listing 12.05, the claimant has the burden of proving "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05. In addition to proving the foregoing, one of four sets of the requirements A, B, C, or D, must also be satisfied. *Id*. In particular, Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and *significant* work-related limitation of function. *Id*.

§ 12.05C (emphasis added). Listing 12.05D requires the same IQ range as 12.05C and at least *two* of the following: a marked restriction in activities in daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id*. § 12.05D.

The Commissioner's regulations applicable to Plaintiff's claim provide that a claimant may submit new and material evidence to the Appeals Council following an adverse ALJ disability determination without any showing of good cause. 20 C.F.R. § 416.1470(b). Furthermore, the Appeals Council "shall" consider "new" and "material" evidence that relates to the period on or before the date of the ALJ hearing decision. *Id*. To be considered by the Appeals Council, the claimant must show that the proffered evidence is (1) "'new' and not merely cumulative of what is already in the record," and that it is (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Lisa v. Sec'y of Health & Human Servs*., 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted). Notably, "[t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)).

14

In its notice to Plaintiff regarding the additional evidence, the Appeals Council stated "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." T. 2. Accordingly, the Appeals Council's reasoning indicates the additional records failed to meet the "material" requirement to be considered on appeal. For the reasons set forth below, the Court finds no error in the Appeals Council's decision to reject the additional evidence.

The Court agrees with Plaintiff that the additional education records containing intelligence testing were indeed "new" and not cumulative of what was in the record. However, the records fail to meet the "material" standard that there was a reasonable possibility they would have influenced the ALJ to make a different finding. *Pollard*, 377 F.3d 193.

At step two, the ALJ found Plaintiff's only severe impairment was low-average intellectual functioning. T. 22. At step three, the ALJ specifically found that Plaintiff did not meet the requirements of Listing 12.05C, in part because the record contained no medical evidence supporting the requirement of 12.05C that the claimant has a physical or other mental impairment imposing additional and significant work-related limitation of function. T. 23.

The ALJ further found that Plaintiff failed to meet the requirements of 12.05D, in part because he showed no marked restriction of activities of daily living, maintaining social

functioning, maintaining concentration, persistence, or pace, or repeated episodes of decompensation. *Id*. The ALJ also found Plaintiff had no restriction in activities of daily living or social functioning. He further found Plaintiff had moderate difficulties with concentration, persistence, or pace, and that he had experienced no episodes of decompensation. *Id*.

In sum, even with evidence of an IQ within the 60 to 70 range, Plaintiff failed to demonstrate he met the additional criteria required to satisfy Listing 12.05C or D. *See Burnette v. Colvin*, 564 F. App'x 605, 607-08 (2d Cir. 2014) (plaintiff failed to demonstrate her impairments satisfied Listing 12.05, despite a consultative examiner placing plaintiff's overall IQ score at 57). Accordingly, the Court finds the Appeals Council properly found that the submitted evidence containing Plaintiff's childhood IQ scores did not demonstrate the reasonable probability it would have changed the outcome of the ALJ's decision. The Court therefore finds remand is not warranted on this basis.

## III. The ALJ's RFC Finding is Supported by Substantial Evidence

Plaintiff also argues the ALJ's RFC assessment is unsupported by substantial evidence. Specifically, Plaintiff argues the ALJ erroneously relied on gaps in the record by not properly developing the record, that the evidence submitted to the Appeals Council contradicts the RFC finding, and that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly relied

on consultative psychologist Dr. Lin's opinion. In particular, Plaintiff takes issue with Dr. Lin's status as a consultative examiner and further argues the ALJ did not properly incorporate Dr. Lin's findings into the RFC finding. For the reasons set forth below, the Court finds the ALJ did not err in evaluating Dr. Lin's opinion, which supported his RFC finding that Plaintiff is capable of performing a full range of work with the additional limitation of being limited to work requiring no more than a brief training period.

"It is well-settled that 'the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996), citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Moreover, "[i]t is well-settled that an ALJ is entitled to rely upon the opinions of consultative examiners, and such written reports can constitute substantial evidence." *Cichocki v. Astrue*, No. 11-CV-755S, 2012 WL 3096428, at *6 (W.D.N.Y. July 30, 2012);

*see also Bona v. Commissioner of Social Security*, No. 1:15-CV-00658EAW, 2016 WL 4017336, at *11 (W.D.N.Y. July 22, 2016) (ALJ appropriately relied upon and gave "significant weight" to opinion of consultative examiner supported by the weight of the evidence).

Dr. Lin examined Plaintiff on July 22, 2014. T. 289-92. Plaintiff reported he completed the 11th grade special education program for a learning disability. Dr. Lin noted Plaintiff's reported medical conditions were left knee problems and migraine headaches. Plaintiff had difficulty falling asleep, with on and off depressive symptoms since he was fifteen years old and that he currently had more good days than bad days, though he occasionally had excessive worry, restlessness, difficulty concentrating, and muscle tension. T. 289. He reported short-term memory difficulty since 2011, and that he would forget about conversations and tasks. T. 290. Plaintiff reported his major stressors were employment and trying to be a good father.

In areas of daily living, Plaintiff reported he was able to take care of his personal needs, though his medical condition made some daily functions difficult. T. 291. He reported his family provided assistance where he needed it and his mother helped him with his money management. Plaintiff stated he was able to drive, but his medical condition sometimes made it difficult. He was able to take public transportation. Plaintiff reported he had good relationships with his friends and family and spent his days

cleaning, watching TV, and spending time in the park with his children. *Id.*

During his mental examination, Plaintiff exhibited a cooperative demeanor with appropriate eye contact. His quality of voice was clear and his expressive and receptive language was adequate. T. 290. Plaintiff was oriented and exhibited an euthymic mood. Dr. Lin noted Plaintiff's attention and concentration appeared to be mildly impaired due to nervousness in the evaluation and distractibility. He was able to perform simple counting, and most calculations, and answer serial threes correctly. T. 209-91. Dr. Lin noted Plaintiff's intellectual functioning appeared to be below average; however, his general fund of information was appropriate to experience.

Dr. Lin opined Plaintiff is able to follow and understand simple directions and instructions. He is able to perform simple tasks independently, and is mildly limited in maintaining attention and concentration. Dr. Lin further opined Plaintiff is able to maintain a regular schedule and can learn new tasks. T. 291. Plaintiff is mildly limited in making appropriate decisions, can relate adequately to others, and is mildly to moderately limited in appropriately dealing with stress. Finally, Dr. Lin opined Plaintiff's difficulties are caused by distractibility and lack of motivation; however, his stress-related problems do not appear to

be significant enough to interfere with his ability to function on a daily basis. T. 291-92.

Dr. Lin diagnosed Plaintiff with unspecified depressive disorder in partial remission, and ADHD, by history. T. 292. Based on the evaluation, Dr. Lin recommended individual psychological therapy, vocational training, and an intelligence and memory assessment if needed. *Id*.

In his decision, the ALJ gave Dr. Lin's opinion significant weight, noting it was generally consistent with the medical evidence of record. T. 26. Plaintiff suggests that the ALJ erred by declining to "adopt any limitations relating to attention deficit" or "any limitations relating to stress." However, Dr. Lin made no diagnosis of a fully active mental disorder at the time of his examination, listing only unspecified depressive disorder in "partial remission," ADHD "by history," and a rule-out diagnosis of "dysthymic" disorder. T 292. Additionally, Plaintiff fails to note Dr. Lin's conclusion that "[t]he results of the evaluation appear to be consistent with stress-related problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." T 292. The ALJ explicitly accounted for Plaintiff's history of attention deficit disorder, as well as Dr. Lin's finding of mild to moderate limitations in the ability to deal with stress, in finding moderate difficulties in the area of concentration, persistence, or pace,

and assessing an RFC limiting Plaintiff to work requiring no more than a brief training period.

Moreover, Plaintiff received no documented mental health treatment during the claimed period of disability. Plaintiff reported to Dr. Lin that he had received treatment in 2011 at Evelyn Brandon Health Center for depression. T. 289. At the hearing, Plaintiff testified he was not taking any medication for his ADHD, nor was he receiving any kind of treatment or therapy for the ADHD. T. 38-39. The ALJ also noted that while there were medical records from November 2012 that discussed Plaintiff's depressive symptoms, the records show he was discharged from mental health care after several failed attempts to continue therapy. T. 24. Where the record contains no mental health treatment for the relevant period, that lack of treatment may weigh against the severity of the claimant's alleged mental limitations. *See e.g.*, *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations.") (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)). In light of the lack of treatment, and Dr. Lin's finding that Plaintiff was capable of a broad range of functional abilities notwithstanding a mild to moderate limitation in appropriately dealing with stress, Plaintiff fails to prove that additional

restrictions regarding dealing with workplace stress are warranted under Social Security Ruling 85-15, 1985 WL 56857, at *6.

In light of the Court's findings that there was no gap in the record and the Appeals Council did not err in rejecting Plaintiff's additional education records. Along with considering Plaintiff's lack of treatment for his mental impairments, and the overall consistent findings of Dr. Lin's examination and opinion with the record as a whole, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    January 24, 2019
          Rochester, New York